**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **ACUTE CARE AMBULANCE SERVICE, L.L.C.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 7:20-cv-217** |
| **ALEX M. AZAR II, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

<u>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

COMES NOW, Acute Care Ambulance Service, LLC (the "Plaintiff" or "Acute") and files this its Motion for Preliminary Injunction against Alex M. Azar II, Secretary of the United States Department of Health and Human Services (the "Defendant"), and alleges and avers as follows:

**ARGUMENT**

As explained further and more fully in Plaintiffs Memorandum of Law in Support of Motion for Preliminary Injunction, Plaintiff, a Medicare certified ambulance supplier, seeks to *temporarily* enjoin HHS's Medicare payment suspension during the COVID-19 emergency or until a hearing is provided on the adverse action in accordance with Due Process of Law. The suspension will irreparably harm the supplier by forcing it out of business and into bankruptcy, and it jeopardizes the health and safety of its patients by disrupting services and requiring that they obtain them elsewhere in the greater-Houston area, a "hotspot" of the COVID-19 outbreak. HHS

violates Due Process of Law and the Fifth Amendment of the U.S. Constitution by imposing the Medicare payment suspension that confiscates Plaintiff's earned Medicare payments but provides no appeal or right to a hearing to challenge the sanction. [1]

Acute Care provides ambulance services to Medicare beneficiaries when the use of other methods of transportation is contraindicated.  Essentially, this requires that the ambulance supplier show that patients' health would be jeopardized by use of any other mode of transportation.  Typically, Medicare covers *emergency* ambulance transportation when a patient experience sudden medical emergency and it endangers his or her health.  It also covers *nonemergency* transportation when medically necessary, and the patient has a written order from his or her physician that ambulance transportation is medically necessary.

Medicare beneficiaries rely upon Acute Care for nonemergency, scheduled repetitive ambulance services.  Indeed, ambulance transportation is necessary to safely shuttle these patients to and from life-saving medical treatments. For example, patients that *must* rely on ambulance transport for dialysis will die if they do not receive this life saving treatment.  Thus, Medicare covers ambulance transportation for a beneficiary who is receiving renal dialysis for treatment of end-stage renal disease (ESRD), from the beneficiary's home to the nearest facility that furnishes renal dialysis, including the return trip.  *See* 42 C.F.R. § 410.40(e)(4).  These transports are covered when the ambulance supplier furnishing the service obtains a written order from the beneficiary's

---

[1] The Fifth Circuit's recent ruling in *Sahara Health Care, Inc. v. Azar*, No. 18-41120 (5th Cir. Sept. 18, 2020), has no application to the present case.  In *Sahara*, the Court held that a home health agency could not complain about lacking due process because it had elected to wait for a required hearing but forgo "escalation."  Also, the Court found that the case was distinguishable from the "unique circumstances" that justified the decision in *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016), where the D.C. Circuit Court had remarked in *dicta* that "nothing suggests that Congress intended escalation to serve as an adequate or exclusive remedy where, as here, a systemic failure causes virtually all appeals to be decided well after the statutory deadlines."  The *Sahara* Court gave particular importance to the mandamus order to eliminate the backlog by the end of fiscal year 2022.  The Court did not comment on the fact that HHS is not fully complying with the order, and that the backlog continues to grow.  Nonetheless, *Sahara* has no application where HHS imposes a suspension that forces the healthcare supplier's closure, but denies it any appeal or right to a hearing to challenge the sanction.

attending physician certifying that the medical necessity requirements have been met.  The physician's order must be dated no earlier than 60 days before the date the service is furnished.

On July 24, 2020, HHS imposed a Medicare payment suspension to withhold all earned payment for services rendered by the Medicare certified ambulance supplier.  These payments will be applied toward a Medicare overpayment should one be subsequently determined by HHS.  However, the government provided no appeal or right to hearing to dispute or contest the action.  Plaintiff moves to temporarily enjoin HHS's "suspension" of its Medicare payments during the COVID-19 emergency or until the government provides a hearing on the adverse action in conformance with Due Process of Law.

The suspension will irreparably harm Plaintiff by forcing it out of business and into bankruptcy, and it jeopardizes the health and safety of the supplier's patients by disrupting their services and requiring that they obtain them elsewhere in the Rio Grande Valley, a "hot spot" of the COVID-19 outbreak.  According to Ms. Jan Spears of MJS & Associates, an expert with 35 years of experience in Medicare ambulance operations, ambulance services for Plaintiff's patients may only be available through Plaintiff's supplier during the COVID-19 emergency, and if it is forced to shut down, they may not be able to access essential healthcare under the Medicare program.

 Violation of Acute Care's Due Process rights is indisputably clear when the supplier will be forced to shut down and file bankruptcy if injunctive relief is not made available.  To be entitled to a preliminary injunction, a movant must show (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury to Plaintiff if an injunction is not granted; (3) that the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to Defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Canal*

*Authority of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).  Thus, a preliminary injunction may be issued in the discretion of the Court to protect Plaintiff from irreparable injury and to preserve the Court's power to render a meaningful decision after a trial on the merits. *Id*. The most compelling reason in favor of granting a preliminary injunction is the need to prevent the judicial process from being rendered futile by Defendant's action.  *Id*., at 573.  While it is often loosely stated that the purpose of a preliminary injunction is to preserve the *status quo*, it has long been recognized that there is no particular magic in the phrase "*status quo*."  The focus of injunctive relief is on the prevention of injury by a proper order, not merely on preservation of the *status quo*.  If the currently existing *status quo* itself is causing one party irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested *states quo* between the parties or by allowing the parties to take proposed action that will minimize the irreparable injury. *Id*., at 576.  Accordingly, this Court should order HHS to cease its suspension of Plaintiff's payments and return those being withheld to the supplier as Plaintiff has met the requirements for a preliminary injunction.

## CONCLUSION

For the reasons stated in this application, Acute Care meets all of the requirements for a preliminary injunction in this case, and the public interest is best served by this Court granting the application.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/ Mark S. Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122

LURESE A. TERRELL
State Bar of Texas No. 24008139
C. TREY SCOTT
State Bar of Texas No. 24083821
12222 Merit Drive, Suite 1750
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
trey@markkennedylaw.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On October 2, 2020, a true and correct copy of the forgoing reply was served on all counsel of record through the CM/ECF system.

/s/ Mark S. Kennedy
MARK S. KENNEDY

## **CERTIFICATE OF CONFERENCE**

On October 2, 2020, I hereby certify that our office conferred with Counsel for Defendant and Defendant is opposed to this motion.

/s/ Mark S. Kennedy
MARK S. KENNEDY