UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ACUTE CARE AMBULANCE SERVICE, L.L.C., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 7:20-cv-00217 |
| ALEX M. AZAR II, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § § § | |
| Defendant. | § § | |

**DEFENDANT'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

For the reasons discussed below, this Court should join District Court Judges Gray H. Miller and Kenneth M. Hoyt of the Southern District of Texas and dismiss Plaintiff's *Verified Complaint for Injunctive and Declaratory Relief and Attorney's Fees* for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Considering complaints nearly identical to Plaintiff's complaint, Judges Miller and Hoyt found that the courts did not have subject matter jurisdiction to consider challenges to the Secretary's decision to suspend Medicare payments during the COVID-19 emergency.  *See Abet Life, Inc. v. Azar*, 2020 WL 3491966 (No. 4:20-cv-01169) (S.D. Tex. 2020) (Dismissing, *sua sponte*, plaintiff's claims challenging a Medicare payment fraud suspension during COVID-19) (*appeal filed*); *Bridgett Memorial Healthcare v. Azar*, No. 4:20-cv-01770 (S.D. Tex. Oct. 15. 2020) (Dismissing plaintiff's claims challenging a Medicare payment fraud suspension during COVID-19).  In the alternative, The Secretary request that the Court dismiss Plaintiff's action for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## I.  INTRODUCTION

On July 24, 2020, the Secretary notified Plaintiff that he was suspending Plaintiff's Medicare payments after receiving information that Plaintiff was submitting fraudulent claims for ambulance services.  Compl. ¶ 3.  The Secretary received credible allegations of fraud against Plaintiff indicating that Plaintiff was submitting claims for ambulance services without adequately establishing that ambulance transport was medically necessary.  *Id*.  The Secretary, who is authorized by Medicare statute and regulations to suspend payments to Medicare providers when he receives a "credible allegation of fraud," temporarily suspended Plaintiff's payments.  *See* 42 U.S.C. § 1395y(o)(1); 42 C.F.R. § 405.371(a)(2).  During the suspension, Plaintiff can continue to provide services and submit claims for reimbursement, but the Secretary holds payment until he and/or his law enforcement partners complete their investigations of the fraud allegations.

In order to circumvent the payment suspension, Plaintiff filed its Complaint asserting that the Secretary violated its due process rights and denied care to its patients by suspending its Medicare payments during the COVID-19 pandemic.  Compl. ¶¶ 50, 51.  However, Plaintiff does not point to any statute, regulation or rule that the Secretary violated when he suspended Plaintiff's Medicare payments.  Instead, Plaintiff wants this Court to step into the Secretary's shoes, and determine whether the Secretary should exercise his discretion not to suspend Plaintiff's Medicare payments.

This Court should dismiss Plaintiff's action because Plaintiff cannot establish that this Court has subject-matter jurisdiction, cannot establish standing for its patients' actions, and cannot state a claim upon which relief can be granted.  Plaintiff cannot show that this Court has jurisdiction because it has not channeled its payment suspension challenge through the

Secretary's administrative appeals process, as Congress requires. *See Abet Life, Inc. v. Azar*, 2020 WL 3491966 (No. 4:20-cv-01169) (S.D. Tex. 2020) (Dismissing, *sua sponte*, plaintiff's claims related to a Medicare payment suspension during COVID-19) (*appeal filed*); *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656 (E.D. Tex. 2019); *Bridgett Memorial Healthcare v. Azar*, No. 4:20-cv-01770 (S.D. Tex. Oct. 15. 2020). Nor can Plaintiff show that it has standing to bring an action on behalf of its patients because it cannot show it has suffered an injury or that there is a causal connection between the payment suspension and the alleged denial of healthcare access *if* Plaintiff decides to stop providing services. *See Deutsch v. Annis Enterpr. Inc.*, 882 F.3d. 169, 173 (5th Cir. 2018). And Plaintiff failed to state a claim for relief because its allegation that the Secretary should not have suspended its payments—without pointing to any legal standard that prevents suspension when the Secretary receives a credible allegation of fraud—does not rise above the speculative level. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, this Court should dismiss Plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.     ISSUES

The issues before the Court are the following: (1) whether it has subject-matter jurisdiction to hear Plaintiff's claims and (2) whether Plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6).

## III.     STATUTORY AND REGULATORY BACKGROUND

"Medicare is a pay-first system. That is, once a Medicare provider submits claims for payment—without any records, documents, or proof that the services were provided or that the services meet Medicare requirements—CMS, through its contractors, automatically pays those claims within a couple of weeks after submission." *True Health Diagnostics, LLC v. Azar*, 392

F. Supp. 3d 656. 677 (E.D. Tex. 2019). So when the Secretary suspects that a provider is submitting fraudulent claims, Congress allows the Secretary to temporary withhold Medicare payments until he can complete an investigation to determine if the provider is submitting proper claims. 42 U.S.C. § 1395y(o).

Medicare regulations allow the Secretary to suspend payments when he determines "that a credible allegation of fraud exists against a provider or supplier, unless there is good cause not to suspend payments." 42 C.F.R. § 405.371(a)(2). "A credible allegation of fraud is an allegation from any source, including but not limited to the following: (1) Fraud hotline complaints, (2) Claims data mining, and (3) Patterns identified through provider audits, civil false claims cases, and law enforcement investigations." 42 C.F.R. § 405.370(a). "Allegations are considered to be credible when they have indicia of reliability." *Id.*

Medicare regulations require the Secretary to give a provider an opportunity to submit a rebuttal statement in writing indicating why the provider believes the suspension should be removed. 42 C.F.R. § 405.372(b)(2). Based on the rebuttal statement, the Secretary makes a determination as to whether the suspension should continue. 42 C.F.R. § 405.375(b)(2). The Secretary's decision to continue the payment suspension cannot be appealed. 42 C.F.R. § 406.375(c).

Every 180 day-period after the Secretary imposes a payment suspension based on fraud, he evaluates whether there is good cause to not continue the suspension and request a certification from the Office of Inspector General (OIG) or other law enforcement agency that the matter is still under investigation and warrants continuation of the suspension. 42 C.F.R. § 405.371(b)(2). After 18 months, the Secretary must deem that good cause to end the suspension

exists unless the matter is being considered by the OIG for administrative action or the Department of Justice (DOJ) request that the suspension continue.  42 C.F.R. § 405.371(b)(3).

During the suspension period, the Medicare Administrative Contractor processes all claims received and the allowable amounts are credited to the provider's account.  At the close of the investigation, if the Secretary determines that an overpayment does not exist, the Secretary will return the suspended payments pursuant to 42 C.F.R. § 405.372(e).  If the Secretary determines that an overpayment exists, the contractor recovers the overpayment by recouping the suspended amounts.  42 C.F.R. § 405.373.

The provider is entitled to administrative and judicial review when there is an overpayment determination, but not before.  In this regard, the Secretary has promulgated regulations—required by Congress—establishing an extensive administrative appeals process in which the provider can challenge initial determinations under 42 U.S.C. § 1395ff(a)(1).  *See* 42 U.S.C. § 1395ff; 42 C.F.R. Part 405, Subpart I.  When the Secretary issues an initial determination denying a claim, the provider has the right to appeal that decision.  The five levels of appeal are:

1) A redetermination of the initial claim decision (42 C.F.R. § 405.940 *et seq.*);

2) A reconsideration conducted by a Qualified Independent Contractor (QIC) (42 C.F.R. § 405.960 *et seq.*);

3) A hearing before an Administrative Law Judge (ALJ) (42 C.F.R. §§ 405.1002(a)(2), 405.1006(b));

4) Review by the Medicare Appeals Council (Council) (42 C.F.R. § 405.1102(a)); and

    5) Judicial review in a U.S. District Court (42 U.S.C. § 1395ff(b)(1)(A)); 42 C.F.R. § 405.1136; 42 C.F.R. § 405.1130.

On March 13, 2020, President Donald J. Trump declared that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020.[1] Because of the national emergency, the Secretary used his authority under section 1812(f) of the Social Security Act to take proactive steps respond to the COVID-19 emergency. Specifically, the Secretary issued waivers allowing regulatory flexibilities to help healthcare providers contain the spread of COVID-19.[2] The Secretary also issued blanket waivers that relax certain requirements for Medicare providers—including ambulance service providers—from March 1, 2020 through the end of the COVID-19 emergency declaration.[3] While the Secretary issued waivers regarding data reporting requirements for ambulance service providers,[4] he has not issued waivers that eliminate the statutory and regulatory requirements for ambulance service providers or stopped payment suspensions based on credible allegations of fraud.

### IV.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that

---

[1] *See* Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID 19) Outbreak, WhiteHouse.gov (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak (last visited July 31, 2020).

[2] Coronavirus Waiver & Flexibilities, CMS.gov, https://www.cms.gov/about-cms/emergency-preparedness-response-operations/current-emergencies/coronavirus-waivers (last visited July 31, 2020).

[3] COVID-19 Emergency Declaration Blanket Waivers for Health Care Providers, https://www.cms.gov/files/document/summary-covid-19-emergency-declaration-waivers.pdf (last visited July 31, 2020); Attach. A.

[4] *Id.* at 30-31.

jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## V.     SUMMARY OF ARGUMENT

Plaintiff's claims should be dismissed because they are barred by sovereign immunity. This Court lacks jurisdiction over Plaintiff's action because Plaintiff failed to meet the specific

7

requirements of Congress's waiver of sovereign immunity.  Plaintiff channel its challenge to the Secretary's payment suspension through the administrative appeals process as required by Medicare statutes.  *See Abet Life, Inc. v. Azar*, 2020 WL 3491966; *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656.  Medicare payment suspensions are not determinations that are subject to judicial review under 42 U.S.C. §§ 1395ff(b) or 405(g), therefore this Court does not have jurisdiction under 42 U.S.C. §§ 405(g), 1395ii or 1395ff(b).  *See id.*; 42 U.S.C. §§ 1395ff, 405(g).  And Plaintiff cannot establish federal question jurisdiction since the Medicare Act specifically precludes jurisdiction under 28 U.S.C. §§ 1331.  Additionally, Plaintiff cannot establish standing to bring claims on behalf of its patients.  Therefore, the Court should dismiss Plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(1).

In the alternative, the Court should dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) because it cannot state a claim for which relief may be granted.  Plaintiff cannot state a due process claim in Count I of its Complaint because it does not have a constitutionally protected right to receive Medicare payments when the Secretary receives a credible allegation of fraud.  To the contrary, Plaintiff admits that the Secretary has the authority to suspend its Medicare payments after receiving a fraud allegation—Plaintiff merely asserts that the Secretary should have used his discretion to decide not to suspend those payments.  In Counts II-IV, Plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.  While Plaintiff argues that the Secretary should have acted differently because of the COVID-19 emergency, Plaintiff cannot point to any authority that prohibited the Secretary from imposing a fraud suspensions to protect the Medicare Trust Fund or that he exceed his statutory authority.  Accordingly, Plaintiff's claims should be dismissed.

## VI.     ARGUMENT

**A.     Plaintiff has failed to establish that this Court has subject-matter jurisdiction.**

In its Complaint, Plaintiff predicates jurisdiction for its claims against the Secretary on a number of grounds: 28 U.S.C. § 1331 (federal question jurisdiction); 42 U.S.C. §§ 405(g), 1395ii, 1395ff(b); and *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Compl. at ¶¶ 12, 13. In this case, the Secretary has not waived his sovereign immunity to allow Plaintiff to bring its action under any of the jurisdictional bases Plaintiff asserts. "It is well settled that the United States may not be sued except to the extent that it has consented to suit by statute." *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir.1998) (citing *United States v. Dalm*, 494 U.S. 596, 608 (1990)). "The terms of such consent, if any, may not be implied but must be unequivocally expressed." *Id.* As explained below none of the Plaintiff's cited statutes support jurisdiction.

### 1.     No jurisdiction exists under 28 U.S.C. § 1331.

While § 1331 allows district court to exercise "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," Congress expressly excluded § 1331 jurisdiction over matters arising under the Medicare Act. Subsection 42 U.S.C. § 405(h) of the Social Security Act provides that "[n]o action . . . shall be brought under section 1331…of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h)[5]; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000). "A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claim is

---

[5] While section 405(h) is a statute that, on its face, only applies to Social Security determinations under 42 U.S.C. § 405(b), 42 U.S.C. § 1395ii applied that statutory subsection to the entire Medicare Act. See 42 U.S.C. § 1395ii (applies "subsections (a), (d), (e), (h), (i), (j), (k), and (*l*) of section 405" to the Medicare Act.)

9

the Medicare Act, or if the claim is 'inextricably intertwined' with a claim for Medicare benefits." *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (*quoting Heckler v. Ringer*, 466 U.S. 602, 606, 623 (1984)) (internal citations omitted).

Section 405(h) applies to all claims "arising under" the Medicare Act, regardless of whether they are framed as procedural, constitutional, or substantive. *Ill. Council* at 13 (citing *Ringer,* 466 U.S. at 627; *Weinberger v Salfi,* 422 U.S. 749, 762 (1975)). The term "arising under" is broadly construed to encompass all claims for relief, regardless of whether the claimant seeks benefits, or declaratory or injunctive relief. *Ringer*, 466 U.S. at 615. The language of section 405(h) "is sweeping and direct and . . . states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." *Physician Hosps. Of America v. Sebelius*, 691 F.3d 649, 654 (5th Cir. 2012) (*quoting Salfi*, 422 U.S. at 757).

In this case, Plaintiff's claims are premised on its claimed entitlement to receive Medicare payments and its patients' entitled to Medicare benefits. *See* Compl. ¶¶ 9-11. But it is the Medicare Act that establishes the terms and conditions for the payment of the ambulance services that Plaintiff asserts that it is entitled to. *See* 42 U.S.C. 1395m(l). It is the Medicare Act that authorizes the fraud suspension that Plaintiff challenges. And it is the Medicare Act that determines which types of Medicare reimbursement actions qualify for the hearing that Plaintiff requests. *See* 42 U.S.C. § 1395ff(b). Thus, Plaintiff's claims "arise under" the Medicare Act, regardless of precisely how they are couched or presented. *See id.* And because Plaintiff's claims arise under the Medicare Act, section 405(h) bars jurisdiction under 28 U.S.C. § 1331. *See Shalala*, 529 U.S. at 10 (Section 405(h) "plainly bars § 1331 review… irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory,

constitutional, or other legal grounds."); *Heckler*, 466 U.S. at 615-16, 622 (APA claims and claims for injunctive and declaratory relief arose under the Medicare Act and were thus barred by section 405(h)); *Weinberger*, 422 U.S. at 760-61 (just because a plaintiff's claim may arise under the Constitution and the Social Security Act does not allow plaintiff to make an end run around section 405(h)); *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 285-86 (5th Cir. 1999) (constitutional claim was inextricably intertwined with claim for administrative entitlement under the Medicare Act). Accordingly, under the plain language of section 405(h), no § 1331 jurisdiction exists.

Nor is Plaintiff's heavy reliance on *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), for § 1331 jurisdiction availing. First, the Fifth Circuit specifically rejected Family Rehab's assertion of 28 U.S.C. § 1331 as a jurisdictional basis. *Family Rehab.,* 886 F.3d at 505. Second, the court found that Family Rehab's claims were collateral because they did not "require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act." *Id.* at 501. As the courts explained in *Abet Life* and *True Health*, an action that seeks to stop the Secretary's payment suspension is not an action that is collateral to the underlying dispute—it is a direct challenge to the Secretary's decision to suspend. *See Abet Life*, 2020 WL 3491966 at *2, *True Health Diag.*, 392 F. Supp. 3d. at 664.

Likewise, Plaintiff's claims are not collateral to the underlying payment suspension. Plaintiff directly challenges the propriety of the Secretary's decision to suspend its payments during COVID-19, and its singular focus is to stop the payment suspension. At bottom, ending a process explicitly authorized by Congress in the Medicare Act – a Medicare payment suspension - is the only action that would satisfy Plaintiff's claims for

11

relief.  And Plaintiff's primary argument to support its action is that the Secretary's decision to suspend its payments during COVID-19 is arbitrary, capricious and an abuse of discretion.  Compl. ¶¶ 72-76.  Therefore, to resolve Plaintiff's claim, the Court would have to immerse itself in the substance of the payment suspension and make a factual determination regarding the suspension – evaluating Medicare statutes and regulations to determine if the Secretary properly exercised his discretion under 42 C.F.R. § 405.371(b)(1).  Thus, as the 5th Circuit explained in *Affiliated Prof'l Home Health Care Agency v. Shalala*, Plaintiff cannot establish jurisdiction under § 1331 because its constitutional claim is not a collateral claim for purposes of exhaustion as it "also seeks to … to halt the suspension of its Medicare payments."  See *Affiliated Prof'l,* 164 F.3d at 285.

        **2.**       **No jurisdiction exists under 42 U.S.C. §§ 405(g), 1395ff or 1395ii.**

Contrary to Plaintiff's assertion, this Court does not have jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1395ff(b) of 1395ii.  *See* Compl. ¶ 15.  In 42 U.S.C. § 405(g), Congress waived sovereign immunity to allow a party to seek judicial review of decisions made by the Social Security Commissioner.  Therefore, on its face, § 405(g) only waives immunity for Social Security determinations under 42 U.S.C. § 405(b).  Section 405(g) only applies to a Medicare decision made by the Secretary of Health and Human Services when Congress explicitly applies that subsection to the Secretary's Medicare decisions.  Plaintiff has not alleged that its action is a decision of the Social Security Commissioner.  Thus, § 405(g), based on its plain language, does not provide jurisdiction for Plaintiff's action.

In section 1395ff(b)(1)(A), Congress waives sovereign immunity and allows a party to seek judicial review of a Medicare reimbursement decision under section 405(g).  However, Congress established three requirements before a party can seek judicial review.  Congress

required that a party receive an initial determination under subsection (a)(1), a redetermination decision and a reconsideration decision. 42 U.S.C. § 1395ff(a)(3)(B)(i), (b)(1)(A). Plaintiff has not alleged that it met any of the three requirements of Congress's waiver of sovereign immunity.

    Medicare payment suspensions are not initial determination under § 1395ff(a)(1), and Plaintiff's does not allege otherwise. Initial determinations are determinations as to whether an individual is entitled to benefits, the amount of benefits available to the individual, or any other initial determination with respect to a claim for benefits - including an initial determination that payment may not be made, or may no longer be made, for an item or service. 42 U.S.C. § 1395ff(a)(1). However, Medicare regulations define a payment suspension as "[t]he withholding of payment by a Medicare contractor from a provider or supplier of an approved Medicare payment amount *before a determination of the amount of the overpayment exists*, or until the resolution of an investigation of a credible allegation of fraud." 42 C.F.R. § 405.370 (emphasis added). Furthermore, even if a payment suspension was an initial determination, Plaintiff could not establish jurisdiction under §§ 1395ff(b)(1) or 405(g) because it has not received the redetermination or reconsideration decisions that the statute requires prior to seeking judicial review. 42 U.S.C. § 1395ff(a)(3)(B)(i), (b)(1)(A). Therefore, Plaintiff cannot establish subject-matter jurisdiction as it has not shown that its action meets the specific requirements of Congress's waiver of sovereign immunity in section 1395ff.

    Plaintiff also asserts that this Court has jurisdiction under 42 U.S.C. § 1395ii. However, section 1395ii does not establish subject matter jurisdiction. Instead, Congress used section 1395ii to apply subsections (a), (d), (e), (h), (i), (j), (k), and (*l*) of 42 U.S.C. § 405(h) to the

Medicare Act.[6]  Notably, Congress did not use section 1395ii to apply subsection (g)—which provides judicial review—to the Medicare Act.  Therefore, section 1395ii does not provide subject matter jurisdiction over Plaintiff's action.

## B.   Plaintiff has failed to state a claim for which relief may be granted.

In this matter, Plaintiff fails to state a claim for relief.  Plaintiff does not dispute the Secretary's authority to suspend payments when he has a credible allegation of fraud.  *See* Compl. ¶ 25-26.  Nor does Plaintiff argue that the Secretary cannot maintain a fraud-based payment suspension during an investigation into the credible allegations of fraud.  *Id*.  In fact, Plaintiff does not assert that the Secretary violated any legal requirement.  Rather, Plaintiff seeks injunctive relief,[7] asserting that the Secretary should not have suspended its payments—even after receiving a credible allegation of fraud—during the COVID-19 emergency.  Compl. ¶¶ 4-8.

In Count I of its Complaint, Plaintiff asserts that it has a "constitutional property right in earned payments for services rendered and now indefinitely suspended during the pendency of the investigation into the adequacy of its documentation."  Compl. ¶ 58.  However, the 5th Circuit has already determined that such a right does not exist.  In *Personal Care Products, Inc. v. Hawkins*, 635 F.3d 155, 158 (5th Cir. 2011), the Court explained that property interests "are not created by the Constitution."  *Id*. at 158.  Rather, property interests are "created and their

---

[6] Section 1395ii states "[t]he provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (h), (i), (j), (k), and (*l*) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."

[7] "The power to grant injunctive relief should be exercised sparingly and with great caution, and only where the reason and necessity therefore are clearly established."  *See Park View Heights Corp. v. City of Black Jack*, 454 F. Supp. 1223, 1227 (E.D. Mo 1978).  A plaintiff seeking an injunction must show: (1) a "substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of the injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (*quoting Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

dimensions are defined by existing rules or understandings that stem from an independent source such as" state or federal laws. *Id*. The court, which rejected a materially identical due-process claim by a Medicaid provider, ruled that the statutory schemes that allow governmental agencies to withhold funding because of fraud investigations do not create property rights to those payments – even the payments that were not under investigation. *See id.* at 159.

And while Plaintiff claims it has a right to receive Medicare payments, it does not point to any statute, legal rule, or mutually explicit understanding between the parties that gives Plaintiff the right to receive Medicare payments when the Secretary receives a credible allegation that Plaintiff is submitting fraudulent claims. Indeed, Plaintiff admits that Medicare regulations allow the Secretary to suspend Medicare payments after receiving a credible allegation of fraud. Compl. ¶¶ 25-28. Plaintiff admits that the Secretary suspended payments based on credible allegations of fraud concerning its Medicare claims—namely that Plaintiff misrepresented services billed to the Medicare program. *Id.* ¶ 3.

Instead, Plaintiff relies on the district court's decision in *Family Rehabilitation, Inc. v. Azar*, 2020 WL 230615 (N.D. Tex. Jan. 15, 2020) to argue that it has a protected property interest in receiving Medicare payments and asserts that the Secretary's fraud suspension during the COVID-19 pandemic denies its property interest. *Id.* ¶ 8. However, *Family Rehabilitation* does not support Plaintiff's assertions. In *Family Rehabilitation*, the court found that the plaintiff had a legitimate claim of entitlement to payment for services rendered because "there is no allegation that Family Rehab knew these services were not covered or was attempting to commit fraud." *Family Rehab.*, 2020 WL 230615 at *7. Here, Plaintiff's payments were suspended based on fraud allegations, therefore *Family Rehab* does not apply. *See id.* Thus, Plaintiff's

15

conclusory allegations do not rise above the speculative level and thus fails to support its right to relief.  *See Twombly*, 550 U.S. at 555.

In Count II, Plaintiff asserts that the Secretary is violating Plaintiff's "patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency."  Compl. ¶ 65.  Even assuming Plaintiff has the standing to bring claims for its patients, the claim is foreclosed by the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773 (1980), which held that Medicare beneficiaries do not have a due-process right to a hearing before their provider's authority to render services is terminated. In *O'Bannon*, approximately 180 elderly residents of a nursing home claimed "a constitutional right to a hearing before a state or federal agency may revoke the home's authority to provide them with nursing care at government expense." 447 U.S. at 775.  The Supreme Court rejected the constitutional claim, even though it recognized that the revocation may have "severe physical or emotional side effects" on the patients. *Id.* at 784.

Moreover, Plaintiff does not state how imposing the suspension due to credible allegations of fraud at this time would prevent its patients from receiving services elsewhere. Plaintiff has not pleaded that it has the authority to represent its patients or that it will suffer a concrete, actual, or imminent injury if its patients are denied healthcare.  Rather, Plaintiff makes conclusory assertions that its patients *may* suffer an injury if the Secretary suspends Plaintiff's payments because its patients *might* not be able to find another ambulance provider *if* it goes out of business.  *See* Compl. ¶¶ 10-11.  Since Plaintiff has only provided conclusory statements to support its right to relief, Plaintiff claims do not rise above the speculative level.  *See Twombly*, 550 U.S. at 555.

In Count III, Plaintiff asserts that the Secretary's suspension of its Medicare payments was arbitrary and capricious because the Secretary failed to find good cause not to suspend Plaintiff's Medicare payments. Compl. ¶¶ 72-76. An agency decision is arbitrary or capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*El Dorado Chemical Co. v. U.S. EPA*, 763 F.3d. 950, 955-56 (8th Cir. 2014). Other than its conclusory statement, Plaintiff provides no explanation as to how the Secretary relied on factors which Congress has not intended it to consider, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Indeed, Plaintiff admits that the Secretary has the discretion to suspend its payments when he receives a credible allegation of fraud and that the Secretary received a fraud allegation regarding its payments. *See* Compl. ¶¶ 25-28. Thus, Plaintiff's claims do not rise above the speculative level.

In Count IV, Plaintiff asserts that the Secretary's acts were *ultra vires* "in failing to give notice and an opportunity for a hearing to dispute and contest the adverse action in conformance with Due Process of law yet imposing Medicare payment suspension during the COVID-19 pandemic and national emergency." Compl. ¶ 79. However, Plaintiff fails to point to any statute that requires the Secretary to provide Plaintiff with a "pre-suspension" hearing. Congress specifically allows payment suspensions when there are credible allegations of fraud. 42 U.S.C. § 1395y(o). The statute authorizing payment suspensions does not require a hearing before doing so nor does it require payment suspensions to stop during national emergencies. *See id.*

17

And in 42 U.S.C. § 1395ff(b)(1), Congress limited the right to ALJ hearings in Medicare reimbursement challenges to initial determinations that received redetermination and reconsideration decisions. 42 U.S.C. § 1395ff(a), (b). Plaintiff has not alleged that the Secretary's suspension of its payments is an initial determination or that it received redetermination and reconsideration decisions. Accordingly, Plaintiff cannot show that the Secretary's actions were *ultra vires* to Medicare statutes. Thus, Plaintiff failed to state a claim.

## VII. CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, or alternatively, for failure to state a claim upon which relief could be granted, and grant Defendants such other and further relief to which they may be entitled.

Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

BY:  */s/ Jose Vela Jr.*
Jose Vela Jr.
Assistant United States Attorney
Attorney in Charge
Fed ID# 25492
Texas State Bar No. 24040072
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 567-9000
Fax: (713) 718-3300
Email: Jose.Vela@usdoj.gov

ATTORNEYS FOR THE DEFENDANT

**OF COUNSEL:**

Robert P. Charrow
General Counsel

Mervin Turner
Chief Counsel

Rama T. Lagadapati
Special Assistant U.S. Attorney
Assistant Regional Counsel
United States Department of Health and Human Services
Office of the General Counsel
Region VI
1301 Young Street, Suite 714
Dallas, Texas 75202
214-767-0779

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the *Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction* was sent via first class mail or electronic mail on October 20, 2020, to:

Mark Stephen Kennedy
Lurese A. Terrell
C. Trey Scott
KENNEDY
Attorneys & Counselors at Law
12222 Merit Drive, Suite 17500
Dallas, TX 75251
214.445.0740
mark@markkennedylaw.com
trey@markkennedylaw.com

Attorneys for the Plaintiff

    /s/ *Jose Vela Jr.*
Assistant United States Attorney