

Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

September 9, 2020

Mark S. Kennedy, Esq.
Kennedy & Counselors at Law
12222 Merit Drive, Suite 1750
Dallas, TX 75251

Re:   Provider Medicare ID Number: AMB 1342
      Provider NPI: 1932471075
      Record Identifier: PSP-200617-00004
      Response to Rebuttal Statement

Dear Mr. Kennedy:

This letter is in response to the suspension rebuttal statement (rebuttal), dated August 3, 2020, you submitted to Qlarant Integrity Solutions, LLC (Qlarant), the Unified Program Integrity Contractor (UPIC) for Medicare Program Integrity for the South Western jurisdiction, on behalf of Acute Care Ambulance Service, LLC (Acute Care), regarding the suspension of Acute Care's Medicare payments, which took effect on July 22, 2020. Prior notice of the suspension was not provided because giving prior notice would place additional Medicare funds at risk and hinder the ability of the Centers for Medicare & Medicaid Services (CMS) to recover any determined overpayment. *See* 42 C.F.R. § 405.372(a)(3). On August 5, 2020, Qlarant received Acute Care's rebuttal statement and forwarded it to CMS for review. CMS is responsible for determining if a suspension of Medicare payments is warranted under applicable federal regulations and as appropriate, whether and when a suspension may be rescinded. *See* 42 C.F.R. § 405.375.

As stated in the Notice of Suspension (Notice), dated July 24, 2020, the suspension of Acute Care's Medicare payments is based on credible allegations of fraud. *See* 42 C.F.R. § 405.371(a)(2). Specifically, the Medicare payment suspension is based on, but not limited to, information that Acute Care misrepresented services billed to the Medicare program. More particularly, medical review of claims submitted to Medicare determined that Medicare coverage guidelines were not met since the documentation submitted to substantiate the claims failed to describe the beneficiaries' symptoms at the time of transport and that other means of transportation were contraindicated. Additionally, beneficiary interviews conducted supported that the ambulance services were not warranted.

In the rebuttal, you assert, on behalf of Acute Care, the following statements for consideration:

1. *"The impact of the Medicare payment suspension threatens the very viability of Acute Care. The ambulance supplier derives in excess of 90% of its revenues from transporting sick and elderly Medicare patients….if the ambulance company is not paid for these services, it cannot pay its employees, the medics and drivers for these very needy patients. Consequently, Acute Care will soon be forced to shut down and file bankruptcy."*





Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

While we understand the operational difficulties that CMS's decision to suspend Medicare payments may cause to suppliers, once it is determined that credible allegations of fraud exist, and that an investigation is therefore warranted, payment suspension enables CMS to protect program funds while the government completes its investigation. Because of the potential impact of a payment suspension, CMS takes great care when assessing whether to impose or continue a payment suspension. CMS is aware that, on April 17, 2020, Acute Care attested to accepting a Provider Relief Fund payment of $60,363.50 from the recently established CARES Act Provider Relief Fund, which is designed to assist eligible suppliers with operational costs during the COVID-19 national public health emergency. CMS has determined that the continued suspension of Acute Care's Medicare payments is warranted during the ongoing investigation.

*"The Rio Grande Valley's residents are particularly vulnerable to COVID-19 with more than 90% being Latinx and having one of the highest poverty rates in the State. Chronic health conditions abound. For example, the rate of diabetes is triple that of the national average. Also, it is chronically underfunded and underserved. Recently, Texas Governor Abbott sent Navy teams to assist the area's hard-hit hospitals in dealing with the Covid-19 outbreak. …The problem is exacerbated by Hurricane Hanna striking the south-Texas coast on July 25, 2020."*

*"If Acute Care is forced to close, the ambulance company's patients will have to obtain their emergency and scheduled medical transportation services elsewhere. Doing so during the COVID-19 outbreak is an uncertainty. In fact, ambulance companies in Rio Grande Valley are now in crisis due to the pandemic. Hospitals are on "divert" status. Ambulances are being forced to wait in hospital parking lots for as long as 12 hours for beds to become available for their patients. Ambulance strike teams are being deployed by the State to the Rio Grande Valley to help the local ambulance companies deal with the coronavirus pandemic."*

*"At this time, ambulance companies are critical during the ongoing COVID-19 outbreak because an ambulance may be the only mode of transportation that patients have to access hospitals as well as other healthcare providers and practitioners."*

*"…Federal regulations provide that CMS may find good cause exists not to suspend a provider or supplier's Medicare payments over credible allegations of fraud where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension, in whole or in part, as to cause a danger to life or health. 42 C.F.R. § 405.371(b)(1)(ii). It is a clear abuse of discretion for CMS to not find that good cause exists here when it will force Acute Care out of business during the COVID-19 pandemic and surge of confirmed coronavirus cases that are overwhelming Rio Grande Valley ambulance companies."*

*"Patients at Acute Care have a constitutional right to access safe and reliable services under the federal Medicare program. …The government's ill-advised suspension will essentially deprive the ambulance company's patients of their constitutional right to access healthcare."*

CMS is very sensitive to the needs of Medicare beneficiaries and has reviewed beneficiary access to ambulance services in the areas served by Acute Care. Acute Care is an ambulance supplier located in

Mercedes, Texas, in Hidalgo County. There are fifty-four (54) ambulance suppliers in Hidalgo County and the surrounding four counties serving the area served by Acute Care. Based on CMS's assessment of access to care due to the operation of other ambulance suppliers in the areas served by Acute Care, CMS has determined that the payment suspension will not jeopardize the ability of Acute Care's patients to obtain ambulance services from other suppliers in the market area if Acute Care is unable to provide beneficiaries with services. Therefore, CMS declines to find good cause to terminate the suspension under 42 C.F.R. § 405.371(b)(1)(ii).

2. ***"Aside from the suspension being essentially a documentation issue, we contend that HHS's use of suspension in the midst of the national COVID-19 emergency is improper…. Payment suspension is improper in the midst of the COVID-19 outbreak because it threatens the viability of Acute Care and jeopardizes the health and safety of its patients."***

   ***"…we request that HHS temporarily rescind the Medicare payment suspension and place the supplier in payment status during the COVID-19 national emergency."***

CMS has used its authority granted under section 1812(f) of the Social Security Act to take proactive steps respond to the 2019 Novel Coronavirus Disease (COVID-19) emergency. CMS has issued waivers allowing regulatory flexibilities to help healthcare suppliers contain the spread of COVID-19.[1] CMS has also implemented blanket waivers and flexibilities that relax certain requirements for Medicare providers and suppliers – including ambulance suppliers – from March 1, 2020 through the end of the COVID-19 emergency declaration.[2] While CMS has issued flexibilities regarding ambulance allowable destinations, participation by states in the Non-Emergent Ambulance Transportation Demonstration, accelerated and advance payments, and provider enrollment to respond to COVID-19,[3] CMS has not issued waivers that eliminate the statutory and regulatory requirements for ambulance services or stopped ambulance payment suspensions based on credible allegations of fraud.

CMS can only pay for ambulance services that comply with Medicare statutes and regulations. Those statutes and regulations require that the documentation provided to support claims demonstrate that the services provided were reasonable and necessary and met Medicare criteria for coverage. Beneficiary interviews have revealed that Acute Care provided ambulance transport to beneficiaries who did not qualify for ambulance transport and post-payment review of Acute Care's claims has revealed that run sheets failed to document a detailed objective description of the patient's symptoms and physical findings to support compliance with Medicare requirements. Documentation failed to support that transportation by any other means was contraindicated and that the level of medical care of an ambulance service was required.

---

[1] Information regarding CMS's COVID-19 waivers and flexibilities can be viewed at https://www.cms.gov/about-cms/emergency-preparedness-response-operations/current-emergencies/coronavirus-waivers.
[2] A list of CMS's blanket waivers as of July 28, 2020 can be viewed at https://www.cms.gov/files/document/summary-covid-19-emergency-declaration-waivers.pdf.
[3] See https://www.cms.gov/files/document/covid-ambulances.pdf.


Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

In addition, Qlarant's review indicates that there have been ongoing concerns related to Acute Care's documentation of services billed to Medicare. Three prior reviews of claims submitted by Acute Care resulted in error rates of 96.8% to100%. The denials were based on a finding that the documentation was not sufficient to support the beneficiary's condition at the time of transport met Medicare guidelines for ambulance transport. On May 6, 2016 Acute Care was educated on properly documenting the patient's condition at the time of transport.

Accordingly, CMS has determined that the payment suspension is warranted during the ongoing investigation into credible allegations that Acute Care has misrepresented services billed to the Medicare program.

3. *"Acute Care has a constitutional right in payments for services rendered and now indefinitely suspended.  HHS violates Due Process of law by imposing the action during the COVID-19 pandemic and emergency without extending to the ambulance supplier notice and a right to a hearing to contest the Medicare payment suspension. There is a high risk that Acute Care will be erroneously deprived of its property interest in Medicare payments it has earned for services rendered and indefinitely withheld by suspension, … because the provider is not entitled under the available process to notice and an opportunity for hearing to dispute and contest the suspension, and there is absolutely no established time frame for resolving the investigation of the claims underlying its imposition."*

It is the Medicare Act, and not the U.S. Constitution that authorizes CMS to pay Acute Care for ambulance services rendered to Medicare beneficiaries. The Medicare Act authorizes payment for ambulance services only if such services are medically necessary. *See* 42 U.S.C. § 1395x (s)(7) and 42 C.F.R. § 410.40.  Per CMS guidance, medical necessity for ambulance services is established when "the patient's condition is such that use of any other method of transportation is contraindicated.  In any case in which some means of transportation other than an ambulance could be used without endangering the individual's health, whether or not such other transportation is actually available, no payment may be made for ambulance services." *See* Medicare Benefit Policy Manual (CMS 100-02), Chapter 10, Sections 10.2.1 and 10.2.3. As explained above, we have credible allegations that the ambulance services that Acute Care is currently providing do not meet the statutory requirements.

The Medicare Act also allows CMS to suspend Medicare payments to Acute Care until the government completes its fraud investigation.  Pursuant to 42 U.S.C. § 1395y(o), if CMS receives a credible allegation of fraud, it may suspend payments to a provider pending an investigation of a credible allegation of fraud.  Pursuant to 42 C.F.R. § 405.372(a)(3), a payment suspension may be imposed without prior notice if CMS, the intermediary, or carrier determines that the Medicare Trust Fund would be harmed by giving prior notice. While the payment suspension action is not appealable, if CMS ultimately determines that Acute Care has received an overpayment, Acute Care has the opportunity to appeal the overpayment determination through five levels of administrative adjudication as well as judicial review. Also, payment suspension terms, where there are credible allegations of fraud, are not indefinite, as you have asserted. Payment suspensions are temporary and do not continue after the resolution of an investigation as defined in 42 C.F.R. § 405.370.





Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

4. ***"Due to the exigent circumstances caused by the COVID-19 pandemic, we will be filing a lawsuit in federal district court asserting a collateral constitutional claim and seeking injunctive and declaratory relief…."***

Your assertions regarding the potential impact on Acute Care due to the COVID-19 national emergency may be considered within the ongoing investigation into Acute Care's billing. However, the COVID-19 national emergency does not justify terminating the suspension, particularly, when the suspension is based on credible allegations of fraud. CMS has determined that in order to protect the Medicare Trust Fund, suspension of Acute Care's Medicare payments is necessary during the ongoing investigation into credible allegations that Acute Care submitted claims for which documentation failed to describe the beneficiaries' symptoms at the time of transport and that other means of transportation were contraindicated and claims for beneficiaries who have stated that the ambulance services provided by Acute Care were not warranted.

In conclusion, after a careful review of Acute Care's rebuttal statement and Acute Care's billing history and prior education, CMS has decided to continue the suspension of Acute Care's Medicare payments due to credible allegations of fraud.  *See* 42 C.F.R. § 405.375.  While CMS's determination to continue the suspension is not appealable, CMS will consider any additional information and/or evidence Acute Care may submit.

Please contact the undersigned in writing should you have any questions about this matter.

Sincerely,

*[signature]*

S. Scott Ward, CFE, AHFI
Program Director
Qlarant Integrity Solutions, LLC



14643 Dallas Parkway, Suite 400  •  Dallas, Texas  75254-1613  •  www.qlarant.com