United States District Court
Southern District of Texas
**ENTERED**
December 03, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ACUTE CARE AMBULANCE SERVICE, §
L.L.C., §
§
     Plaintiff, §
§
VS. §
§ CIVIL ACTION NO. 7:20-cv-00217
§
ALEX M. AZAR II, Secretary of the United §
States Department of Health and Human §
Services, §
§
     Defendant. §

## OPINION AND ORDER

The Court now considers "Plaintiff's Motion for Preliminary Injunction,"[1] and its supporting memorandum of law,[2] Defendant's response,[3] and Plaintiff's reply.[4] The Court also considers "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction,"[5] Plaintiff's response,[6] and Defendant's reply.[7] After considering the briefing, record, and relevant authorities, the Court **GRANTS** Defendant's motion to dismiss, **DENIES AS MOOT** Plaintiff's motion for preliminary injunction, and dismisses this case.

### I.  BACKGROUND AND PROCEDURAL HISTORY

This is a Medicare payment dispute. Plaintiff Acute Care Ambulance Service, L.L.C. provides ambulance transportation services "to Medicare beneficiaries when the use of other methods of transportation is contraindicated," such as when the patient's health would be

---

[1] Dkt. No. 8.
[2] Dkt. No. 9.
[3] Dkt. No. 15.
[4] Dkt. No. 16.
[5] Dkt. No. 14.
[6] Dkt. No. 17.
[7] Dkt. No. 18.

jeopardized by another mode of transportation.[8] Plaintiff must comply with numerous federal regulations to receive taxpayer-funded Medicare payments for its services.[9] On July 24, 2020, Defendant Alex M. Azar II, the Secretary of the United States Department of Health and Human Services, or his designees suspended Plaintiff's Medicare payments after determining "that a credible allegation of fraud exists against" Plaintiff.[10] Plaintiff alleges Defendant Secretary made this determination only upon a single incidence of deficient documentation.[11] As a result of the Medicare payment suspension, from which Plaintiff derives over 90% of its revenues, Plaintiff alleges its business is threatened and its patients cannot access ambulance transport services during the COVID-19 pandemic, which Plaintiff argues constitutes an abuse of Defendant's discretion and a violation of constitutional due process for both Plaintiff and the patients Plaintiff serves.[12] Plaintiff brings claims for a violation of procedural due process for itself and its patients, a claim that Defendant's suspension of payments is arbitrary and capricious, an ultra vires claim, and a request for declaratory relief and attorneys' fees and costs.[13]

Plaintiff commenced this action on August 7, 2020,[14] and subsequently acquired summons for the Defendant on August 18th.[15] Plaintiff served process, and such service was acknowledged, on August 21st.[16] Plaintiff moved for a preliminary injunction on October 2nd[17] and Defendant moved to dismiss on October 20th.[18] Both motions are briefed and ripe for consideration. The Court turns to the analysis.

---

[8] Dkt. No. 1 at 1, ¶ 1.
[9] *See, e.g.*, 42 C.F.R. §§ 410.40–.41.
[10] Dkt. No. 1 at 2, ¶ 3 (quoting 42 C.F.R. § 405.371(a)(2)).
[11] *Id.*
[12] Dkt. No. 1 at 2–6, ¶¶ 4–11.
[13] Dkt. No. 1 at 19–22, 25.
[14] Dkt. No. 1.
[15] Dkt. Nos. 3–4.
[16] Dkt. No. 7.
[17] Dkt. No. 8.
[18] Dkt. No. 14.

## II. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Although Plaintiff's motion for a preliminary injunction was filed earlier in time,[19] the Court first turns to Defendant's motion to dismiss because it attacks the Court's jurisdiction. Motions under Federal Rule of Civil Procedure 12(b)(1) are to be considered first, before addressing any attack on the merits,[20] because the Court cannot exercise any "judicial action" other than dismissal when the Court lacks jurisdiction.[21]

### a. Legal Standard

It is a "well-settled principle that litigants can never consent to federal subject matter jurisdiction, and the lack of subject matter jurisdiction is a defense that cannot be waived."[22] Federal Rule of Civil Procedure 12(b)(1) permits motions to dismiss for "lack of subject-matter jurisdiction." "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim,"[23] because federal courts only have jurisdiction to decide controversies as conferred by the United States Constitution or by statute.[24] While the Court has jurisdiction to determine its jurisdiction,[25] it cannot exercise any "judicial action" other than dismissal when the Court lacks jurisdiction.[26] If any party attacks the Court's jurisdiction, "the party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss."[27] In assessing the Court's jurisdiction, "the district court

---

[19] *Compare* Dkt. No. 8 *with* Dkt. No. 14.

[20] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[21] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[22] *Gonzalez v. Guilbot*, 255 F. App'x 770, 771 (5th Cir. 2007) (citing *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996)); *see* 28 U.S.C. § 1447(c).

[23] *In re FEMA Trailer*, 668 F.3d at 286 (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998)).

[24] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[25] *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

[26] *Steel Co.*, 523 U.S. at 94.

[27] *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).

is to accept as true the allegations and facts set forth in the complaint,"[28] and may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[29] Accordingly, the Court may consider evidence outside the pleadings to determine subject matter jurisdiction.[30] Ultimately, "[a] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[31]

> **b. Analysis**

Defendant Secretary argues that "[t]his Court should dismiss Plaintiff's action because Plaintiff cannot establish that this Court has subject-matter jurisdiction, cannot establish standing for its patients' actions, and cannot state a claim upon which relief can be granted."[32] Defendant urges the Court join an evidently growing consensus of district courts in Texas that have dismissed complaints like this one.[33] Plaintiff responds that this Court has jurisdiction under any one of four statutes: 28 U.S.C. § 1331 or 42 U.S.C. §§ 405(g), 1395ff, or 1395ii.[34]

Ordinarily, this Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[35] But Medicare is an exception. The United States Supreme Court held that federal courts lack jurisdiction over any claim "arising under the

---

[28] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

[29] *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[30] *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[31] *Choice Inc. of Tex.*, 691 F.3d at 714 (quoting *Ramming*, 281 F.3d at 161).

[32] Dkt. No. 14 at 2.

[33] *Id.* at 1, 3 (citing *Abet Life, Inc. v. Azar*, No. H-20-1169, 2020 WL 3491966 (S.D. Tex. June 26, 2020) (Miller, J.); *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656 (E.D. Tex. 2019); and *Bridgett Mem'l Healthcare v. Azar*, No. 4:20-cv-1770 (S.D. Tex. Oct. 15, 2020) (Hoyt, J.)).

[34] Dkt. No. 17 at 9–12, ¶¶ 22–28.

[35] 28 U.S.C. § 1331.

Medicare laws" until the plaintiff proceeds "through the special review channel that the Medicare statutes create" and becomes entitled to judicial review if dissatisfied with the final special review results.[36] "A claim arises under the Medicare Act if both the standing and the substantive basis for the presentation of the claim is the Medicare Act, or if the claim is inextricably intertwined with a claim for Medicare benefits."[37] The requirement to proceed through the special Medicare review channel is equally applicable to constitutional claims "when that claim is 'inextricably intertwined' with a substantive claim of administrative entitlement."[38]

When a plaintiff brings a Medicare claim, one particular statute, 42 U.S.C. § 405(g), "to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all claims arising under the Medicare Act."[39] Section 405(g) ostensibly applies only to social security determinations, but 42 U.S.C. § 1395ii makes section 405(g) applicable to Medicare.[40] Federal court "jurisdiction under section 405(g) is determined under a two prong test. First, there must have been a presentment to the Secretary. This element can never be waived and no decision of any type can be rendered if this requirement is not satisfied. Second, the claimant must have exhausted his administrative review."[41] The presentment element is "nonwaivable and

---

[36] *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) (citing 42 U.S.C. §§ 405(g)–(h)); *see* 42 U.S.C. § 1395ii.

[37] *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (quotations and citations omitted).

[38] *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (per curiam) (quoting *Heckler v. Ringer*, 466 U.S. 602, 611 (1984)); *see Shalala*, 529 U.S. at 10 ("The statute plainly bars § 1331 review in such a case, irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds."); *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 654 (5th Cir. 2012).

[39] *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (quotation and alteration omitted); *see Walters v. Leavitt*, 376 F. Supp. 2d 746, 752 (E.D. Mich. 2005) (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)) (summarizing the complicated statutory relationship between the Social Security Act and the Medicare Act).

[40] *Heckler*, 466 U.S. at 615.

[41] *Affiliated Prof'l Home Health Care Agency*, 164 F.3d at 285 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) ("The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute.")).

nonexcusable"[42] and requires the channeling of "virtually all legal attacks" including all claims through the agency before bringing them in federal court.[43] However, the second element of exhaustion is waivable. "Three narrow exceptions excuse exhaustion: (1) the *Eldridge* collateral-claim exception under § 405(g); (2) the preclusion-of-judicial-review exception under 28 U.S.C. § 1331; and (3) mandamus jurisdiction under 28 U.S.C. § 1361."[44] Under the collateral claim exception, "jurisdiction may lie over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.'"[45] The Fifth Circuit recently elaborated:

> For a claim to be collateral, it must not require the court to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act. Nor can the claim request relief that would be administrative, i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process. Instead, the claim must seek some form of relief that would be unavailable through the administrative process.[46]

The Court finds that Plaintiff met the nonwaivable presentment element under the first prong of § 405(g) jurisdiction. There is a low bar to find presentment: "The *Eldridge* court held that the plaintiff beneficiary met the presentment requirement because he 'presented' a claim simply by answering a questionnaire as to whether his benefits should be terminated, even when there was no prior decision as to his eligibility."[47] Here, Plaintiff alleged it presented its constitutional claim on August 3, 2020,[48] four days before filing suit. Plaintiff filed documents

---

[42] *S. Rehab. Grp. v. Sec'y of HHS*, 732 F.3d 670, 679 (6th Cir. 2013).

[43] *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

[44] *Adams EMS, Inc. v. Azar*, No. CV H-18-1443, 2018 WL 5264244, at *5 (S.D. Tex. Oct. 23, 2018) (Rosenthal, C.J.) (citing *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018)).

[45] *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330–32 (1976)).

[46] *Id.* at 501–02 (citations and quotations omitted).

[47] *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 662–63 (E.D. Tex. 2019) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 329–30 (1976)).

[48] Dkt. No. 1 at 18, ¶ 14.

6 / 29

demonstrating that it presented its claims to Defendant's contractor.[49] Defendant's contractor responded on September 9, 2020, denying Plaintiff's claim and declining to stay or terminate the suspension of Medicare payments.[50] Defendant does not challenge Plaintiff's presentment argument.[51] This Court finds Plaintiff met the presentment requirement under 42 U.S.C. § 405(g) as interpreted by the Supreme Court.[52]

The Court also finds that Plaintiff meets the collateral claim exception under the second prong of § 405(g) jurisdiction. Plaintiff argues its claims fall under the collateral claim exception to the ordinary requisite of administrative exhaustion.[53] Defendant argues that Plaintiff's claim cannot avail of this collateral exception because "an action that seeks to stop the Secretary's payment suspension is not an action that is collateral to the underlying dispute—it is a direct challenge to the Secretary's decision to suspend."[54] As support, Defendant cites to a nonbinding[55] district court case dealing with "Medicare payment suspensions based on 'credible allegations of fraud' pursuant to 42 C.F.R. § 405.371(a)(2),"[56] which is the same regulation implicated here.[57] This Court in that case held that "plaintiff's claims were not wholly collateral to a substantive agency decision because the claim directly challenged the Government's decision to suspend payment pending its fraud investigation," so the court lacked jurisdiction to hear the plaintiff's claim, on the authority of yet another district court case.[58] That latter case

---

[49] Dkt. No. 9-1 at 4, ¶ 13 (citing Dkt. No. 9-1 at 29).
[50] Dkt. No. 9-1 at 4, ¶ 14 (citing Dkt. No. 9-1 at 36).
[51] *See* Dkt. No. 18.
[52] *See Mathews v. Eldridge*, 424 U.S. 319, 329 (1976).
[53] Dkt. No. 17 at 8, ¶ 20.
[54] Dkt. No. 14 at 11.
[55] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").
[56] *Abet Life, Inc. v. Azar*, No. H-20-1169, 2020 WL 3491966, at *2 (S.D. Tex. June 26, 2020) (Miller, J.).
[57] Dkt. No. 1 at 2, ¶ 3.
[58] *Abet Life, Inc.*, 2020 WL 3491966, at *2 (citing *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 663–64 (E.D. Tex. 2019)).

confusingly held that the Medicare provider plaintiff, True Health Diagnostics, "did not show that its claims are wholly collateral. Indeed, THD seeks the exact relief courts have identified as non-collateral. THD requests that the Court lift the 2019 Suspension be lifted [sic] before it even receives an overpayment determination from CMS. This is the exact substantive, permanent relief that THD can seek through the agency appeals process."[59] But the *True Health Diagnostics* court did not cite any authority for its reasoning. In contrast, the Fifth Circuit held that "if plaintiffs request relief that is proper under the organic statute—by requesting that benefits or a provider status be *permanently* reinstated—the claim is not collateral. But plaintiffs *may* bring claims that sound only in constitutional or procedural law . . . and request that benefits be maintained *temporarily* until the agency follows the statutorily or constitutionally required procedures."[60] The latter type of request satisfies the collateral claim exception.[61] Because Plaintiff's due process claim concerns explicitly temporary relief,[62] *True Health Diagnostics* is unpersuasive. Furthermore, *True Health Diagnostics* is inapplicable to this case because the plaintiff's due process claim in that case required analyzing the plaintiff's allegations under the coverage of the Medicare Act,[63] which is not necessarily true in this case because resolution of what process is due before Defendant Secretary suspends Plaintiff's Medicare payments does not necessarily require resolution of whether Defendant properly determined that Plaintiff was not eligible to receive Medicare payments.

---

[59] *True Health Diagnostics, LLC*, 392 F. Supp. 3d at 664.
[60] *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 503 (5th Cir. 2018) (citations omitted) (first emphasis in original).
[61] *Id.* at 503–04.
[62] Dkt. No. 1 at 19, ¶ 62.
[63] *See True Health Diagnostics, LLC*, 392 F. Supp. 3d at 664 ("THD argues CMS violated its due process rights because the 2019 Suspension is allegedly based on claims that were part of the 2017 Suspension. To determine whether such an allegation is true, the Court would need to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act—thus making THD's claim not collateral.").

Defendant next argues that Plaintiff's "singular focus is to stop the payment suspension" and a "constitutional claim is not a collateral claim for purposes of exhaustion [if] it 'also seeks to . . . halt the suspension of its Medicare payments.'"[64] However, in the Fifth Circuit case Defendant quotes for support, the Medicare provider's claim was that the Secretary of Health & Human Services "conspired to violate [the provider's] right to due process and equal protection under the United States Constitution. Specifically, [the provider APRO] charged the Secretary with improperly and arbitrarily enforcing various Medicare rules and regulations based solely on the fact that APRO is an African–American owned enterprise."[65] Specifically on the facts of the case before it, the Fifth Circuit held that the provider's claim would necessitate the court "immerse itself in those [Medicare] regulations and make a factual determination as to whether APRO was actually in compliance" with the provider regulations, so "[g]iven the administrative nature of that inquiry, it cannot be reasonably concluded that APRO's claim is collateral to a claim for administrative entitlement."[66] In other words, because APRO's claim required resolving the application of the Medicare Act and its implementing regulations, and because APRO specifically sought relief which could be obtained through the Medicare special review channel, APRO's claim was held not to be collateral.

In contrast, "[t]he question presented in the instant case, whether a [pre-suspension] oral, evidentiary hearing is required under the Due Process Clause of the Fifth Amendment before the Secretary [suspends payments], is similar to the procedural due process claim asserted in *Mathews*. A ruling on the merits of Plaintiff's procedural due process claim will involve this Court in no way with a determination of whether" the Secretary properly suspended Medicare

---

[64] Dkt. No. 14 at 12 (quoting *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (per curiam)).
[65] *Affiliated Prof'l Home Health Care Agency*, 164 F.3d at 284.
[66] *Id.* at 285–56.

payments or whether Plaintiff submitted any fraudulent Medicare reimbursement claim.[67] This

Court finds the following precedential *ratio decidendi* controls this case:

> [The provider] Family Rehab's procedural due-process and *ultra vires* claims will
> not require the court to wade into the Medicare Act or regulations; those
> claims only require the court to determine how much process is required under the
> Constitution and federal law before recoupment. Because Family Rehab asks only
> that recoupment be suspended until a hearing, and because it raises claims
> unrelated to the merits of the recoupment, its claims are collateral. . . . Ultimately,
> Family Rehab seeks only the suspension of recoupment before a hearing, which is
> plainly collateral to the result of that hearing.[68]

Plaintiff seeks markedly similar relief in this case: "injunctive relief that requires Defendant to

*temporarily* rescind the Medicare payment suspension during the pendency of the COVID-19

pandemic and national emergency or until it can provide notice and a hearing in conformance

with constitutionally required procedures."[69] Accordingly, the Court finds that Plaintiff seeks

relief that is "unrelated to the merits of the" suspension and thus entirely collateral to the agency

decision.[70]

To avail of the collateral exception, Plaintiff must also show that full relief cannot be

obtained at a postdeprivation hearing.[71] Plaintiff need only raise a colorable claim with "some

possible validity" to meet the exception.[72] "In *Family Rehabilitation*, the Court found that the

combined threats of going out of business and disruption to Medicare patients was sufficient for

irreparable injury. There, plaintiff provided home healthcare services to patients and Medicare

payments constituted 94% of plaintiff's revenue."[73] Plaintiff's allegation in this case is again

markedly similar: "The impact of the Medicare payment suspension threatens the very viability

---

[67] *D&G Holdings, LLC v. Burwell*, 156 F. Supp. 3d 798, 815 (W.D. La. 2016) (citation omitted), *aff'd Family Rehab., Inc. v. Azar*, 886 F.3d 496, 503 n.12 (5th Cir. 2018).
[68] *Family Rehab., Inc.*, 886 F.3d at 503–04 (5th Cir. 2018).
[69] Dkt. No. 1 at 22, ¶ 82 (emphasis added); *id.* at 19, ¶ 62 (same).
[70] *Family Rehab., Inc.*, 886 F.3d at 503.
[71] *See supra* note 45.
[72] *Family Rehab., Inc.*, 886 F.3d at 504 n.15 (quotation omitted).
[73] *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 664 (E.D. Tex. 2019) (citation omitted).

of Acute Care. The ambulance supplier derives in excess of 90% of its revenues from transporting sick and elderly Medicare patients. . . . Consequently, Acute Care will soon be forced to shut down and file bankruptcy."[74] The Court holds that Plaintiff raises a colorable claim that full relief cannot be obtained at a postdeprivation hearing.

The Court finds that Plaintiff has met the presentment element and may avail of the collateral claim exception to administrative exhaustion under 42 U.S.C. §§ 405(g) and 1395ff[75] and 1395ii,[76] but only as to Plaintiff's individual interest. The Court briefly addresses Plaintiff's claim that Defendant violated Plaintiff's patients' due process right to receive Medicare services.[77] This claim fails for lack of standing. In general, "a litigant may only assert his own constitutional rights or immunities."[78] Plaintiff asserts two potential exceptions.[79] The first precedent cited was issued on the same day as *Brown v. Board of Education* and applied *Brown* and its school desegregation rationale to the District of Columbia.[80] The Court is left to guess as to how this case is even slightly relevant. The second precedent cited held that certain physicians are "intimately involved" in a woman's abortion decision, and are "uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, that decision," so the Supreme Court held that physicians may generally assert the rights of its women patients vis-à-vis abortion.[81] However, "[t]he Fifth Circuit has declined to recognize a protected property interest in favor of a third-party stemming from an agreement between the United States and

---

[74] Dkt. No. 1 at 2–3, ¶ 4.
[75] *See Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779 (11th Cir. 2002) (holding that 42 U.S.C. § 1395ff(b)(1) of the Medicare Act adopts 42 U.S.C. § 405(g) of the Social Security Act); *Family Rehab., Inc.*, 886 F.3d 496, 500 n.4 (same).
[76] *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).
[77] *See* Dkt. No. 1 at 20, ¶¶ 64–65.
[78] *United States v. Raines*, 362 U.S. 17, 22 (1960).
[79] Dkt. No. 17 at 19, ¶ 40.
[80] *Bolling v. Sharpe*, 347 U.S. 497 (1954).
[81] *Singleton v. Wulff*, 428 U.S. 106, 117–18 (1976).

another entity."[82] Similarly, the Supreme Court held that elderly patients have no "constitutionally protected interest in life, liberty, or property" when the government enforces valid regulations against the patients' Medicare facility and discontinues Medicare payments to the provider.[83] Plaintiff cites no case extending the physician-abortion standing to the Medicare provider context.[84] The Court finds the on-point precedents controlling over the generality established in the abortion case.  The Court finds Plaintiff does not have standing[85] to assert the constitutional rights of its patients and **GRANTS** Defendant's motion to dismiss with respect to Plaintiff's count 2 for an alleged violation of patients' "due process right of access to healthcare."[86] The Court **DENIES** Defendant's motion to dismiss[87] to the extent it seeks to dismiss Plaintiff's remaining claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The Court finds it has jurisdiction to address Plaintiff's due process, arbitrary and capricious, and ultra vires claims.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Before the Court proceeds to consider Plaintiff's motion for a preliminary injunction,[88] the Court first ascertains whether Plaintiff states a claim upon which relief can be granted and for which a preliminary injunction may issue.

### a.  Legal Standard

---

[82] *Supreme Home Health Servs., Inc. v. Azar*, 380 F. Supp. 3d 533, 556 n.14 (W.D. La. 2019) (citing *McCasland v. City of Castroville*, 514 F. App'x 446, 449 (5th Cir. 2013)).

[83] *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 790 (1980).

[84] *See* Dkt. No. 17 at 19 n.5.

[85] *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (alteration in original) (quotation omitted) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . .").

[86] Dkt. No. 1 at 20 (Count 2).

[87] Dkt. No. 14.

[88] Dkt. No. 8.

The Court uses federal pleading standards to determine the sufficiency of a complaint.[89] "A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts."[90] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[91] The Court reads the complaint as a whole[92] and accepts all well-pleaded facts as true (even if doubtful or suspect[93]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[94]), but will not strain to find inferences favorable to the plaintiff,[95] but also will not indulge competing reasonable inferences that favor the Defendant.[96] A plaintiff need not plead evidence[97] or even detailed factual allegations, especially when certain information is peculiarly within the defendant's possession,[98] but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the

---

[89] *See Genella v. Renaissance Media*, 115 F. App'x 650, 652–53 (5th Cir. 2004) (holding that pleadings must conform to federal pleading requirements).

[90] *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (quotation omitted); *see Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)) ("The decision disposing (of) the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail.").

[91] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[92] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

[93] *Twombly*, 550 U.S. at 555–56.

[94] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'")).

[95] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[96] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009).

[97] *Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 240–41 (5th Cir. 2016).

[98] *See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (holding that pleading "on information and belief" is acceptable when the inference of culpability is plausible).

elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[99]

In evaluating a motion to dismiss, Courts first disregard any conclusory allegations or legal conclusions[100] as not entitled to the assumption of truth,[101] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[102] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[103] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[104] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible"[105] because discovery is not a license to fish for a colorable claim.[106] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[107] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[108]

---

[99] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).
[100] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").
[101] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").
[102] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").
[103] *Iqbal*, 556 U.S. at 678.
[104] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).
[105] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).
[106] *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015); *see Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").
[107] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).
[108] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[109] Attachments to the complaint become part of the pleadings for all purposes,[110] but the Court is not required to accept any characterization of them because the exhibit controls over contradictory assertions,[111] except in the case of affidavits.[112] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[113] but not if the material is a matter of public record[114] or a website[115] and not if a defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[116]

### b.  Whether Plaintiff States a Property Interest

Defendant first argues that Plaintiff has no cognizable property right to Medicare payments and thus cannot state a claim for their suspension.[117] Plaintiff responds that "Medicare providers have a legitimate claim of entitlement to payment for services that are covered under the Medicare Act and actually rendered."[118] Plaintiff argues that jurisprudence has recognized Plaintiff's protected property interest.[119]

---

[109] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[110] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing FED. R. CIV. P. 10(c)).

[111] *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014)

[112] *Bosarge v. Miss. Bureau of Narc.*, 796 F.3d 435, 440–41 (5th Cir. 2015) ("[W]hile the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [plaintiff's] allegations.").

[113] FED. R. CIV. P. 12(d).

[114] *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

[115] *Hyder v. Quarterman*, No. CIV.A. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) (Owsley, J.) (collecting cases).

[116] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).

[117] Dkt. No. 14 at 14–15.

[118] Dkt. No. 17 at 14, ¶ 32.

[119] Dkt. No. 16 at 3 n.2 (citing Dkt. No. 9 at 20–21).

The Fifth Amendment to the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law." Accordingly, to state a claim for violation of due process, Plaintiff must identify a property interest of which it was deprived.[120] "If Plaintiff has no property interest, there can be no due process violation."[121] Plaintiff alleges that "Acute Care has a constitutional property interest in payments for services rendered."[122]

This particular question has divided district courts in the Fifth Circuit but has yet to be determined by the Fifth Circuit. On one hand, at least three district judges have found a property interest in Medicare payments.[123] On the other, at least two district judges (including this one) have found no property interest.[124] Two of the cases finding a property interest are presently on appeal.[125] Both cases finding no property interest have been affirmed on appeal. In one affirmance, the property interest in Medicare payments does not appear to have been an issue on appeal and was not decided by the Fifth Circuit.[126] In the other appeal, the Fifth Circuit avoided the property interest question.[127]

---

[120] *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[W]e must determine whether Logan was deprived of a protected interest, and, if so, what process was his due.").

[121] *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 571 (S.D. Tex. 2018) (Alvarez, J.).

[122] Dkt. No. 1 at 5, ¶ 9.

[123] *Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 751 (N.D. Tex. 2019) (Fish, J.) ("Med-Cert has a valid property interest in receiving Medicare payments for services rendered."); *Adams EMS, Inc. v. Azar*, No. CV H-18-1443, 2018 WL 5264244, at *10 (S.D. Tex. Oct. 23, 2018) (Rosenthal, C.J.) ("Adams has a property interest in receiving and retaining the Medicare payments it has earned."); *Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 587, 596 (S.D. Tex. 2018) (Rosenthal, C.J.) (quoting *Family Rehab., Inc. v. Azar*, No. 3:17-CV-3008-K, 2018 WL 3155911, at *4 (N.D. Tex. June 28, 2018) (Kinkeade, J.) ("Plaintiff 'has a property interest in the Medicare payments for services rendered.'").

[124] *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572 (S.D. Tex. 2018) (Alvarez, J.); *Supreme Home Health Servs. v. Azar*, 380 F. Supp. 3d 533, 555 (W.D. La. 2019); *cf. In Touch Home Health Agency, Inc. v. Azar*, 414 F. Supp. 3d 1177, 1189–90 (N.D. Ill. 2019) (holding the provider lacked a property interest).

[125] *See Med-Cert Home Care, L.L.C. v. Azar*, No. 20-10443 (5th Cir. appeal filed May 8, 2020); *Family Rehab., Inc. v. Azar*, No. 20-10271 (5th Cir. appeal filed Mar. 12, 2020).

[126] *See Supreme Home Health Servs. v. Azar*, 812 F. App'x 229 (5th Cir. 2020).

[127] *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 529 n.6 (5th Cir. 2020).

Nevertheless, the Court draws instructive guidance from the existing jurisprudence. All three cases determining that a property interest in Medicare payments exists cite no binding authority, and instead simply find that a property interest exists with little analysis.[128] However, on remand from the Fifth Circuit while revisiting the property interest question, Judge Ed Kinkeade of the Northern District of Texas conducted further analysis. In January 2020, citing the Fifth Circuit's decision in *Personal Care Products, Inc. v. Hawkins*, Judge Kinkeade held that a property interest in Medicare payments exists.[129] Previously, this Court, analyzing *Personal Care Products* and one other Fifth Circuit precedent, found no property interest. The Fifth Circuit declined to reverse this Court on that point on appeal.[130] In September 2020, almost as if responding to Judge Kinkeade, the Fifth Circuit cited the same *Personal Care Products* case and adumbrated that *no* property interest exists: "[The provider] maintains that it has a property interest in Medicare payments it has earned for services rendered on properly billed claims. This court has rejected a similar theory, where providers argued that they had a property interest in legitimately earned, current Medicaid reimbursements that are not subject to investigation."[131] The writing on the wall seems clear: there is no property interest in Medicare payments.

Additional Fifth Circuit jurisprudence supports this holding. In *Ridgely v. FEMA*,[132] the Fifth Circuit dealt with plaintiffs' claims that the federal government, via the Disaster Relief Act, was improperly administering its rental assistance programs in the aftermath of Hurricanes

---

[128] *See supra* note 123.

[129] *Family Rehab., Inc. v. Azar*, No. 3:17-CV-3008-K, 2020 WL 230615, at *5 (N.D. Tex. Jan. 15, 2020) (citing *Pers. Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 158 (5th Cir. 2011)).

[130] *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572 (S.D. Tex. 2018) (Alvarez, J.) ("Most recently, in *Personal Care Products, Inc. v. Hawkins*, the Fifth Circuit affirmed a district court's finding that a Medicaid medical supply provider had no protected property interest in the payment of its Medicaid claims."), *aff'd*, 975 F.3d 523 (5th Cir. 2020).

[131] *Sahara Health Care, Inc.*, 975 F.3d at 529 (quotations and alteration omitted).

[132] 512 F.3d 727 (5th Cir. 2008).

Katrina and Rita.[133] The Fifth Circuit examined whether plaintiffs could claim a property interest in the rental assistance payments and held as follows:

> According to plaintiffs, section 408 [of the Disaster Relief Act] and the regulations create an entitlement because they set out criteria that make an award of benefits "mandatory and not discretionary" for all eligible applicants. In determining whether statutes and regulations limit official discretion, the Supreme Court has explained that we are to look for "explicitly mandatory language, *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." Unfortunately for plaintiffs, such mandatory language is wholly absent from section 408 and the regulations.[134]

The Fifth Circuit found that the statute and its implementing regulations used "entirely permissive terms" like "may."[135] Because the statute and regulation did not use mandatory language, the court held they did not create any property interest for the putative beneficiaries.[136] Critically, the court held that, under the statute, "an individual has *no right to receive* rental assistance, even if assistance is being offered and he meets the eligibility criteria."[137] Similarly here, the Medicare statute and its implementing regulations do not create or vest any *right to receive* payments in Medicare providers. The only regulations Plaintiff cites to show a mandatory directive to pay concern *suspension* of payments.[138] One such regulation provides, "[p]ayments suspended under the authority of § 405.371(a) are first applied to reduce or eliminate any overpayments."[139] Nothing in the regulation concerns or provides a specific directive to pay or explicitly mandatory language giving Plaintiff a right to receive payment. Plaintiff's argument that a property interest exists is unpersuasive.

---

[133] 512 F.3d 727, 729 (5th Cir. 2008).
[134] *Id.* at 735–36 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).
[135] *Id.* at 736.
[136] *Id.*
[137] *Id.* (emphasis added).
[138] Dkt. No. 17 at 16, ¶ 35 (citing 42 C.F.R. §§ 405.370(a), 405.372(e)).
[139] 42 C.F.R. § 405.372(e).

However, the Court need not decide this issue. In a recent appeal, the Fifth Circuit "decline[d] to decide the property interest question" in favor of addressing whether the government provided adequate process under the *Mathews v. Eldridge* test.[140] This Court will now do the same.

### c.   Whether Plaintiff States a Claim for Violation of Due Process

Defendant argues that "the Court should dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) because it cannot state a claim for which relief may be granted. Plaintiff cannot state a due process claim in Count I of its Complaint . . . .".[141] Plaintiff responds that its "procedural Due Process claim provides a basis for finding a likelihood of success on the merits."[142]

The Court examines the sufficiency of the process and looks to the "familiar procedural due process inspection instructed by *Mathews v. Eldridge*."[143] The parties agree that this is the governing standard.[144] Under the totality of the circumstances, the Court:

> balances the private interest, the governmental interest, and the costs and benefits of additional procedures. Specifically, one looks to: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[145]

This is the test even if a plaintiff is deprived of their property and provided with postdeprivation review.[146]

---

[140] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 529 (5th Cir. 2020).

[141] Dkt. No. 14 at 8; *accord* Dkt. No. 15 at 12 ("As discussed below, Plaintiff has also failed to satisfy the due process elements established by the Supreme Court.").

[142] Dkt. No. 17 at 13, ¶ 30.

[143] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 529 (5th Cir. 2020) (quoting *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017)).

[144] Dkt. No. 17 at 13, ¶ 30; Dkt. No. 15 at 12.

[145] *Sahara Health Care, Inc.*, 975 F.3d at 529 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[146] *See Thibodeaux v. Bordelon*, 740 F.2d 329, 336 (5th Cir. 1984) ("The balancing process usually dictates that the state provide some kind of predeprivation hearing, for such a procedure can be both minimally intrusive and effective in preventing arbitrary deprivations. This is not always the case, however.").

The Court pauses here to note that it is analyzing, at this stage of judicial review, Plaintiff's challenge to Defendant Secretary's suspension of Medicare payments as violative of the Due Process Clause on their face, as opposed to as applied to Plaintiff's specific context—otherwise, the analysis would not be collateral as the Court would need to "'immerse itself' in the substance of the underlying Medicare claim or [make] a 'factual determination' as to the application of the Medicare Act."[147]

> When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate, the judicial branch of the government has only one duty; to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former. All the court does, or can do, is to announce its considered judgment upon the question.[148]

The Court describes the parties' factual circumstances as follows only in order to analyze the Secretary's suspension against the Due Process Clause.

The Court first identifies what process is provided. Congress specifically gave the Secretary of the United States Department of Health and Human Services the power to suspend payments pending an investigation into a "credible allegation of fraud."[149] The Secretary has delegated this power. In this case, Plaintiff's Medicare payments were suspended by Qlarant (presumably a Medicare contractor) on July 24, 2020, pursuant to 42 C.F.R. § 405.371(a)(2),[150] which permits Medicare payments to be "[i]n cases of suspected fraud, suspended . . . by CMS or a Medicare contractor if CMS or the Medicare contractor has consulted with the OIG, and, as appropriate, the Department of Justice, and determined that a credible allegation of fraud exists against a provider or supplier, unless there is good cause not to suspend payments." Under the

---

[147] *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 663 (E.D. Tex. 2019) (quoting *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999)).
[148] *United States v. Butler*, 297 U.S. 1, 62 (1936).
[149] 42 U.S.C. § 1395y(o).
[150] Dkt. No. 1 at 2, ¶ 3; Dkt. No. 9-1 at 19.

governing regulatory scheme, the provider may submit a rebuttal letter, generally within 15 days, including "any pertinent information" as to why the provider's Medicare payments should not be suspended.[151] Within 15 days, CMS or the Medicare contractor must consider the rebuttal letter and decide whether to continue or terminate the suspension.[152] However, even if all steps are followed, CMS's or the contractor's final decision "is not an initial determination and is not appealable."[153] This Court labels this before-initial-determination administrative scheme "track 1" for ease of reference.

An initial determination is simply the "determination when a claim for Medicare benefits under Part A or Part B is submitted," including the determination that such a claim is fraudulent or improper.[154] No time period is set forth in the regulations for CMS or the Medicare contractor to actually issue an initial determination if the initial determination is not on a "clean claim,"[155] that is, a claim "submitted by or on behalf of the beneficiary who received the items and/or services."[156] CMS or the contractor must reexamine whether good cause exists to continue the Medicare payment suspension every 180 days, and "[g]ood cause *not* to continue to suspend payments to an individual or entity against which there are credible allegations of fraud must be deemed to exist if a payment suspension has been in effect for 18 months and there has not been a resolution of the investigation," unless the case is referred to the Office of the Inspector General for administrative action or the Department of Justice requests that the suspension continue.[157] However, the Medicare payment suspension can technically continue indefinitely

---

[151] 42 C.F.R. § 405.374.
[152] 42 C.F.R. § 405.375(a).
[153] *Id.* § 405.375(c); *accord* 42 C.F.R. § 405.924 (actions that are initial determinations).
[154] 42 C.F.R. § 405.904(a)(2).
[155] *See* 42 C.F.R. §§ 405.904, 405.922.
[156] 42 C.F.R. § 405.922.
[157] 42 C.F.R. § 405.371(b)(2)–(3) (emphasis added).

"because there is no established time frame for resolving the investigation."[158] Until CMS or the contractor issue their initial determination, the provider is locked out of the administrative review scheme,[159] which is a four-step administrative review process involving (1) a redetermination by a contractor, (2) a reconsideration by an independent contractor, (3) a hearing and de novo review before an administrative law judge, and (4) a review by the Medicare Appeals Council, followed by judicial review.[160] The provider may submit evidence at steps one and two, but not generally at steps three or four.[161] This after-initial-determination scheme is "track 2."

Plaintiff and Defendant disagree about whether track 1 can surmount the *Mathews* due process review factors. "The requirement for some kind of a hearing [before the final deprivation of property interests] applies to the taking of private property . . . ."[162] Plaintiff strongly urges the Court to interpret "some kind of a hearing" as requiring numerous due process guarantees: an unbiased tribunal, notification of the evidence on which the adverse determination is based, a right to cross-examine, a decision based only on the evidence presented, and an appealable decision.[163] But Plaintiff's authority for this proposition is merely a law review article, and however well-reasoned the article or luminary its author, this Court is bound by Fifth Circuit precedent holding that the type of hearing necessary or process due "is a function of the context of the individual case,"[164] not a hard and fast rule, and the "constitutional minimum of due

---

[158] Dkt. No. 9 at 27.
[159] *See* 42 C.F.R. § 405.928.
[160] *See True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 661 (E.D. Tex. 2019) (summarizing the administrative review channel).
[161] *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 526 (5th Cir. 2020) (citing 42 C.F.R. §§ 405.946(a), 405.966(a)).
[162] *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).
[163] Dkt. No. 17 at 16–17, ¶¶ 36–37 (citing Henry J. Friendly, *"Some Kind of Hearing"*, 123 U. PA. L. REV. 1267 (1975)); *accord* Dkt. No. 9 at 28.
[164] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 530 (5th Cir. 2020) (quoting *Jones v. La Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 236 (5th Cir. 2015)).

process guarantees [only] that 'notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner.'"[165]

The Court finds the amount of process due to be governed by the Fifth Circuit's September 2020 decision in *Sahara Health Care, Inc. v. Azar*.[166] In *Sahara*, the plaintiff Sahara was a home health agency that derived about 75% of its revenue from Medicare reimbursements, but the Secretary of the U.S. Department of Health and Human Services sought to collect on $3.6 million of Medicare overpayments to the provider.[167] Sahara proceeded through two of the administrative review steps under track 2, then filed in federal court before completing the remainder of administrative review.[168] The Fifth Circuit affirmed this Court's dismissal of the plaintiff's due process and ultra vires claims because the "government provided Sahara adequate process and complied with the statute."[169] The Fifth Circuit addressed Sahara's objections to track 2 administrative review by holding that "Sahara fails to demonstrate what value [additional process] would add to the process Sahara has already received or is otherwise entitled to receive" under the first two steps of track 2 review.[170] Accordingly, the Court understands *Sahara* to sanction the Secretary's postdeprivation process.[171] Indeed, the Fifth Circuit explained its agreement with the Fourth Circuit that judicial review must analyze the Medicare postdeprivation process as a whole against the Due Process Clause and found that the postdeprivation process did not violate *Sahara*'s constitutional right to due process.[172]

Because of the marked similarities between *Sahara* and this case, the Court holds that *Sahara* governs the outcome. As the Fifth Circuit stated in *Sahara*, "the provider [is] myopically

---

[165] *Id.* (quoting *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012)).
[166] *Id.*
[167] *Id.* at 526.
[168] *Id.* at 526, 528.
[169] *Id.* at 526.
[170] *Id.* at 531.
[171] *See id.* at 532.
[172] *Id.* at 532–33.

focused on the tree of the [initial suspension] while it ignore[s] the forest of the full comprehensive five-step scheme of procedural protections."[173] As in *Sahara*, Plaintiff in this case sought to sue in federal court before even awaiting a response to its rebuttal letter and "cannot complain about lacking due process when the privation (foregoing escalation and judicial review) was its own choice."[174] Even if the first and third *Mathews* factors concerning the governmental interest and private interest weigh in Plaintiff's favor, "the sufficiency of the current procedures and the minimal benefit of the live hearing weighs so strongly against [Plaintiff] that [the Court] reject[s] its due process claim."[175]

Plaintiff attempts to distinguish *Sahara* by arguing that it "has no application where HHS imposes a suspension that forces the healthcare supplier's closure, but denies it any appeal or right to a hearing to challenge the sanction."[176] Plaintiff is addressing the distinction between track 1 administrative review, under which no hearing is available, and track 2 administrative review, under which a hearing is available before an administrative law judge at step three.[177] But again, Plaintiff's argument is flawed in that it myopically challenges only one aspect of the whole administrative review scheme. Plaintiff tries to make much of the fact that track 2 review is closed off until the Centers for Medicare and Medicaid Services or a contractor issues an initial determination, which may not happen for an indefinite amount of time,[178] but the plaintiff's argument in *Sahara* that it could not receive a hearing before an administrative law judge for multiple years was markedly similar. The Fifth Circuit rejected the latter argument and held "Sahara received some procedure, chose to forego additional protections, and cannot

---

[173] *Id.* at 533.
[174] *Id.*
[175] *Id.* at 529–30.
[176] Dkt. No. 9 at 8 n.1.
[177] *See* 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1002(a).
[178] Dkt. No. 17 at 16–17, ¶ 36.

demonstrate the additional value of the hearing it requests. The procedure it received was constitutionally adequate . . . ."[179] Similarly here, track 1 review *does* provide some procedure to provide "an initial check against mistaken decisions," which may be a constitutional minimum.[180] As in *Sahara*, Plaintiff here rushed to file in federal court two weeks after receiving the notice of suspension and is not entitled to judicial relief holding that due process is lacking when foregoing the remainder of the existing due process scheme "was [Plaintiff's] own choice."[181] The Court cannot examine only whether one particular administrative step afforded adequate due process, because courts are bound to respect Congress's and the Secretary's scheme even if the court would disagree as a policy matter with the existing process.[182] This initial review under track 1 is "just a part of the 'comprehensive whole that ends with an opportunity for timely judicial review'" that the Fifth Circuit countenanced in *Sahara*.[183]

Plaintiff also attempts to discount *Sahara* by arguing that it "is not a final judgment because the mandate has yet to issue, and thus not properly relied upon as precedent."[184] However, the Fifth Circuit's "judgment is entered when it is noted on the docket."[185] *Sahara* has

---

[179] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 533 (5th Cir. 2020).

[180] *See Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 536 (7th Cir. 2008) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).

[181] *Sahara Health Care, Inc.*, 975 F.3d at 533. Although the following discussion is obiter dictum because it analyzes Plaintiff's claim as applied, the Court discusses Plaintiff's factual context because it illuminates the procedural sufficiency of the initial check against mistaken decisions. Plaintiff availed of track 1 review within two weeks of the initial suspension letter, but did not use the opportunity to argue that Plaintiff's Medicare payment suspension was mistaken. Plaintiff instead argued in its rebuttal letter that the Secretary abused his discretion and took an unconstitutional action. Dkt. No. 9-1 at 29–31. Plaintiff called the suspension "essentially a documentation issue." *Id.* at 30. Qlarant, the "Unified Program Integrity Contractor" for CMS, responded to Plaintiff's rebuttal letter on September 9, 2020, in a detailed 4-page letter and explained that what Plaintiff minimized as a "documentation issue" is the substantive predicate upon which Medicare pays reimbursements and that requests for payment cannot be honored when they are deficient under the governing regulations. *Id.* at 36–40. Qlarant explained both in its initial letter and rebuttal response letter why Plaintiff's payments were suspended for deficient documentation and Plaintiff did not directly challenge that determination, instead relying on due process and arbitrary and capricious arguments. *Compare* Dkt. No. 9-1 at 30, *with* Dkt. No. 9-1 at 32, 38–39.

[182] *Sahara Health Care, Inc.*, 975 F.3d at 532–33.

[183] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 530–31 (5th Cir. 2020) (quoting *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 204 (4th Cir. 2019)).

[184] Dkt. No. 16 at 2 n.1.

[185] Fed. R. App. P. 36(a).

been published in the Federal Reporter.[186] Furthermore, the Fifth Circuit's ruling in *Sahara* originated from this Court, and even if the Fifth Circuit had not yet decided the case, the Court would find its decision in *Sahara* persuasive in this case.[187] Plaintiff cites no rule to show why the Court cannot rely on *Sahara* and the Court rejects this argument.

In sum, the Court holds that Plaintiff "fails to demonstrate what value [additional process] would add to the process [Plaintiff] has already received or is otherwise entitled to receive."[188] Plaintiff does not even address what value additional process would give, only that additional process is more likely to reduce erroneous deprivations.[189] "[T]he adequate process that [Plaintiff] has received and the procedural protections it has chosen to forego weigh strongly, and decisively, against it."[190] The Court holds that Defendant has provided Plaintiff "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner"[191] via its Medicare administrative review scheme. Accordingly, the Court **GRANTS** Defendant's motion to dismiss with respect to Plaintiff's count 1 for alleged violation of procedural due process.

### d.   Whether Plaintiff States a Claim for Arbitrary and Capricious or Ultra Vires Agency Action

Plaintiff claims that Defendant acted arbitrarily and capriciously in failing to "find that good cause exists here where the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm south-Texas' Rio Grande Valley healthcare system, including ambulance suppliers like Acute Care."[192] Plaintiff also claims Defendant acted ultra vires, that is,

---

[186] *See* 5th Cir. R. 47.5 (governing the publication of opinions).
[187] *See Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 576 (S.D. Tex. 2018) (Alvarez, J.).
[188] *Sahara Health Care, Inc.*, 975 F.3d at 531.
[189] *See* Dkt. No. 17 at 16–18, ¶¶ 36–38.
[190] *Id.* at 530.
[191] *Id.* (quoting *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012)).
[192] Dkt. No. 1 at 21, ¶ 75.

"beyond the scope of power allowed or granted by a corporate charter or by law"[193] "in failing to give notice and an opportunity for a hearing to dispute and contest the adverse action in conformance with Due Process of law yet imposing Medicare payment suspension during the COVID-19 pandemic and national emergency."[194] In its motion to dismiss, Defendant points out that a Medicare statute specifically confers the power on Defendant to suspend Medicare payments in light of a credible allegation of fraud.[195] Defendant also argues that Plaintiff's allegations are conclusory and provide "no explanation as to how the Secretary relied on factors which Congress has not intended it to consider, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[196] Plaintiff responds only that the Secretary abused his discretion in not finding that "good cause exists where the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system."[197]

The Administrative Procedure Act "requires agencies to engage in reasoned decisionmaking and directs that agency actions be set aside if they are arbitrary or capricious . . . . [The Court] is not to substitute its judgment for that of the agency, but instead [assesses] only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[198] This is a narrow review.[199]

> An agency action will be overturned only if it is contrary to statute or "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or

---

[193] *Ultra Vires*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[194] *Id.* at 22, ¶ 79.
[195] Dkt. No. 14 at 17 (citing 42 U.S.C. § 1395y(o)).
[196] *Id.* (citing *El Dorado Chem. Co. v. EPA*, 763 F.3d 950, 955–56 (8th Cir. 2014)).
[197] Dkt. No. 17 at 19, ¶ 42.
[198] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks and citations omitted).
[199] *Id.*

is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[200]

Plaintiff appears to *disagree* with Defendant's judgment concerning good cause to not suspend Medicare payments to Plaintiff under 42 C.F.R. § 405.371(b)(1)(ii),[201] but Plaintiff does not allege that Defendant acted *contrary* to statute or regulation or relied on illicit factors, entirely failed to consider an important aspect of the problem, decided against the evidence, or that the decision is so implausible that it could not be ascribed to a different view.[202] It is "necessary to go beyond general conclusory statements and plead facts which would support the conclusion that the action in question was arbitrary and capricious."[203] Plaintiff fails to allege that Defendant acted in an arbitrary or capricious manner because Defendant fails to allege any improprieties beyond disagreement with Defendant's judgment.[204]

"[A]n *ultra vires* claim rests on 'the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient.'"[205] Defendant is specifically granted the power by statute to suspend Medicare payments "pending investigation of credible allegations of fraud."[206] Defendant determined a credible allegation of fraud existed because it had "indicia of reliability," and no more is required.[207] No more need be said. The Court **GRANTS** Defendant's motion to dismiss with respect to Plaintiff's count 3 arbitrary and capricious claim and count 4 ultra vires claim.

### IV. CONCLUSION AND HOLDING

---

[200] *Envtl. Integrity Project v. U.S. EPA*, 969 F.3d 529, 539 (5th Cir. 2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).
[201] Dkt. No. 17 at 19, ¶ 42.
[202] *See* Dkt. No. 1 at 21, ¶ 75.
[203] *McCall v. Dall. Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 636 (N.D. Tex. 2001) (citing *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387–88 (5th Cir. 2001)).
[204] *See Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 567 (S.D. Tex. 2018).
[205] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949)).
[206] 42 U.S.C. § 1395y(o).
[207] Dkt. No. 14 at 4 (quoting 42 C.F.R. § 405.370(a)).

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss.[208] The Court lacks jurisdiction to consider Plaintiff's count 2 claim because Plaintiff lacks standing to assert its patients' interests. The Court holds that Plaintiff fails to state a claim for its count 1, count 3, and count 4 claims.

In its response brief, Plaintiff makes a one-paragraph motion for leave to amend if the Court grants Defendant's motion to dismiss.[209] "This is improper. First, requests to the Court must be made by motion, not in a response brief. Furthermore, the Court recently dealt with a near-identical request and held that cursory requests for leave to amend would be denied."[210] The Court has no obligation to permit leave to amend.[211] Plaintiff's motion for leave to amend is **DENIED**.

Plaintiff is not entitled to relief and Plaintiff's claims are dismissed. The Court **DENIES AS MOOT** Plaintiff's motion for preliminary injunction.[212] Plaintiff's claims and this case are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs. This case is terminated and the Clerk of the Court is instructed to close the case.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 3rd day of December 2020.

_____
Micaela Alvarez
United States District Judge

---

[208] Dkt. No. 14.
[209] Dkt. No. 17 at 20, ¶ 43.
[210] *Curtis v. Cerner Corp.*, No. 7:19-cv-00417, 2020 WL 4934950, at *3 (S.D. Tex. Aug. 24, 2020) (Alvarez, J.) (citing FED. R. CIV. P. 7(b)(1), then citing *VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-cv-269, 2020 WL 918670, at *5–6 (S.D. Tex. Feb. 26, 2020) (Alvarez, J.)).
[211] *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017).
[212] Dkt. No. 8.